**LEW SHEE v. NAGLE, Commissioner of Immigration.**

Circuit Court of Appeals, Ninth Circuit. October 31, 1927.

No. 5170.

1. **Aliens ⬅⟶32(18)—Evidence sustained finding of immigration officials that Chinese applicant for admission to United States was not wife of lawfully domiciled merchant.**

Finding of immigration officials that Chinese applicant for admission to United States was not wife of lawfully domiciled merchant living in San Francisco sustained by evidence showing that testimony of applicant and her alleged husband and another contained discrepancies of account of events connected with alleged wedding in China.

2. **Aliens ⬅⟶54(14)—Appeal from immigration officials' order denying applicant admission to United States could be dismissed by Assistant to Secretary of Labor (5 USCA § 613a).**

Appeal to Department of Labor from order of immigration officials denying applicant admission to the United States could be dismissed by Assistant to Secretary of Labor under Act March 4, 1927 (5 USCA § 613a), creating office and providing that assistants shall perform such duties as may be prescribed by Secretary of Labor or required by law, in view of Rev. St. §§ 161, 177, 179 (5 USCA §§ 4, 6, 22), imposing more extended duties in certain contingencies.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Petition by Lew Shee for writ of habeas corpus against John D. Nagle, as Commissioner of Immigration at the Port of San Francisco, Cal. From an order denying her petition, petitioner appeals. Affirmed.

Geo. A. McGowan, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before HUNT and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. Lew Shee appeals from an order denying her petition for writ of habeas corpus. The immigration records were before the District Court. Demurrer interposed by the government was sustained. It is argued that the finding of the immigration officials that Lew Shee was not the wife of Yep You has no substantial support in the evidence.

Yep You was a lawfully domiciled merchant living at San Francisco. He came to the United States in 1881, and departed for China April 15, 1924, and returned December 29, 1926, accompanied by applicant, Lew Shee, asserting that she was his wife. Yep You was over 50 years of age when he returned, and had never been married before his alleged marriage to Lew Shee, who is 22 years old. He testified that he married Lew Shee in China on August 30, 1924; that no children were born of the marriage; that two feasts were held at the time of his wedding, one on the day of the wedding, and the other the day following, and that a man named Yep Quock Wing was present at the wedding and one feast; that Wing, who was a witness in the hearing before the immigration officials, visited at witness' home in Tung Hing village after the alleged marriage, and

that he, the husband, was present at the time of two such visits; that he received from one Lew Loy a four-generations paper, which was used as an evidence of marriage of Lew Shee; that he had never given Lew Shee any jewelry before or after the wedding, as the custom of his village was to make no presents to the woman one married; that after his marriage, and while living in Tung Hing village, Lew Shee, his wife, went to visit her parents three times, but never remained overnight; that the woman who acted as go-between at the time of the wedding accompanied his wife on these visits to her parents.

Lew Shee testified that there were three feasts at the wedding, and that the witness, Quock Wing, was present at all of them; that she never had seen the four-generations paper containing the names of her ancestors. Afterwards she said she had seen the paper on the table where her husband had left it; that the earrings she wore were given to her at Hong Kong by her husband; that after the marriage she visited her parents, and on two occasions remained away several nights.

[1] There were other discrepancies which need not be set forth. Suffice it to say that, if the applicant is the wife of Yep You, it is remarkable that her account of events connected with her wedding should be so at variance with that of her alleged husband, and that her account and his vary in many respects with that given by the witness Quock Wing. Considering the conflicting evidence, we conclude that the action of the executive authorities, in finding that Lew Shee had not established that she is the wife of Yep You and entitled to enter, must be sustained.

[2] Petitioner contends that her appeal to the Department of Labor was not properly disposed of, because the order dismissing her appeal was made by Arthur E. Cook, Assistant to the Secretary, and not by the Secretary of Labor. The Assistant to the Secretary of Labor is an office created by Act of Congress March 4, 1927 (44 St. 1415 [5 USCA § 613a]), which provides that there shall be in the Department of Labor not more than two Assistants to the Secretary, who shall be appointed by the President and shall perform such duties as may be prescribed by the Secretary of Labor or required by law. The language conferring authority is not new. In the act creating the Department of Labor (Act March 4, 1913, 37 St. 736) it was provided that there shall be an Assistant Secretary of Labor, to be appointed by the President, who shall perform such duties as "shall be prescribed by the Secretary or required by law." Section 2 (5 USCA § 612). By Act June 30, 1922 (42 Stat. 766), provision was made for an additional Secretary of Labor, to be appointed by the President, who "shall perform such duties as shall be prescribed by the Secretary of Labor or required by law, and in case of the death, resignation, absence, or sickness of the Assistant Secretary shall, until a successor is appointed, or such absence or sickness shall cease, perform the duties devolving upon the Assistant Secretary by reason of section 177, Revised Statutes, unless otherwise directed by the President, as provided by section 179, Revised Statutes." Section 1 (5 USCA § 613).

It will be observed that the authority so given in the statute cited is in all substantial respects like that conferred by section 439 of the Revised Statutes (5 USCA § 483) upon the Assistant Secretary of the Interior, who "shall perform such duties in the Department of the Interior as shall be prescribed by the Secretary, or may be required by law." As far as we are advised, these statutes have been construed by executive and judicial authority as empowering the heads of departments to prescribe that the assistants shall dispose of such matters as the Secretaries see fit to refer to them, and as they themselves could dispose of.

Many years ago Attorney General Garland held that, under section 439, supra, the Secretary of the Interior might prescribe to the Assistant authority to do the things that the Secretary had power to do with respect to contingent funds. 18 Op. Atty. Gen. p. 432. And again, at a later time, he advised that under section 439, supra, the Assistant Secretary of the Interior could decide appeals to the Secretary of the Interior from the Commissioner of the General Land Office, provided the Secretary of the Interior should, by regulation, prescribe the performance of such duty. 19 Op. Atty. Gen. p. 133.

In Turner v. Seep (C. C.) 167 F. 646, the court, construing the opinions of the Attorney General, cited section 439 as persuasive of the view that the Secretary of the Interior could delegate authority to the Assistant to sign leases of Indian lands. In Shillito Co. v. McClung (C. C. A.) 51 F. 868, it was held that section 245 of the Revised Statutes (5 USCA § 247), providing that the "Assistant Secretaries of the Treasury shall examine letters * * * prepared for the signature of the Secretary, * * * and perform such other duties in the office of the Secretary of the Treasury as may be

prescribed by the Secretary or by law," does not confine the powers of Assistants to the duties of a like nature with those enumerated in the statutes, especially when read in connection with sections 161 and 177 (5 USCA §§ 4, 22), which impose more extended duties in certain contingencies. Section 161 authorizes the head of each department to prescribe regulations not inconsistent with law for the government of his department, the distribution and performance of its business, and the custody, use, and preservation of records and property appertaining to it. Section 177 provides that, in case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall, unless otherwise directed by the President, as provided by section 179 (5 USCA § 6), perform the duties of such head until a successor is appointed or such absence or sickness shall cease.

When we consider the immense volume of business that flows into the respective executive departments of the government, it is easy to understand that the purpose of creating Assistants and authorizing them to do such work as the Secretaries may prescribe was to insure practical and reasonably expeditious disposition of the public business.

The judgment is affirmed.